2011 UT App 281

STATE of Utah, Plaintiff and Appellee,

v.

Jason Lyle BUTLER, Defendant and Appellant.

No. 20090914–CA.

Court of Appeals of Utah.

Aug. 25, 2011.

Randall W. Richards and Brittany R. Brown, Ogden, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City; Branden B. Miles, Ogden, for Appellee.

Before Judges McHUGH, ROTH, and CHRISTIANSEN.

## MEMORANDUM DECISION

CHRISTIANSEN, Judge:

¶1 Defendant Jason Lyle Butler appeals the district court's denial of his motion to suppress evidence. After the district court denied his suppression motion, Defendant entered a conditional guilty plea, *see generally State v. Sery*, 758 P.2d 935, 938 (Utah Ct. App.1988), for possession of a controlled substance, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2010),[1] wherein he retained his right to appeal the district court's decision on his suppression motion. We affirm.

¶2 Defendant argues that his rights protected by the Fourth Amendment of the United States Constitution were violated by

---

1. We cite to the current version of the code for the reader's convenience because the subsequent amendments do not affect this appeal. *See* Utah Code Ann. § 58–37–8 amend. notes (Supp. 2010).

an illegal traffic stop, an illegal detention following the stop, and an illegal search of his vehicle.[2] "We review for clear error the factual findings underlying a district court's decision to deny a motion to suppress. Whether the district court correctly denied the motion to suppress, however, is a legal conclusion that we review for correctness." *State v. Applegate,* 2008 UT 63, ¶ 5, 194 P.3d 925 (citation omitted); *see also State v. Worwood,* 2007 UT 47, ¶ 11, 164 P.3d 397 ("In cases involving Fourth Amendment questions under the United States Constitution, we review mixed questions of law and fact under a correctness standard...."). In making the legal determination of whether the facts support the suppression of evidence, we objectively view the totality of the circumstances known to the officer at the time of the stop or arrest, rather than the officer's subjective beliefs about what may justify the stop or arrest. *See State v. Despain,* 2007 UT App 367, ¶ 9, 173 P.3d 213 (discussing the requirement that a court evaluate whether probable cause for an arrest existed under the totality of the circumstances); *State v. Humphrey,* 937 P.2d 137, 141 (Utah Ct.App.1997) (discussing the requirement that a court evaluate reasonable suspicion for a stop under "the totality of the circumstances present at the time of the stop").

I.  Defendant's Traffic Stop Based on an Agent's Observation that Defendant Committed a Minor Traffic Violation Was Constitutional.

A.  Defendant Failed to Establish a Flaw in the Evidence on Which the Court Relied.

■ ¶ 3 Defendant initially argues that the State produced insufficient evidence at the suppression hearing to justify the traffic stop based on Defendant's minor traffic violation. Although Defendant acknowledges in his

brief that "both Agents [Brandon] Beck and [Kasey] Burell stated that Defendant failed to signal when he was exiting from the curb," Defendant suggests that this evidence was insufficient because it contradicted his own testimony that he had properly signaled. Despite listing supporting evidence, Defendant has not established the fatal flaw in the evidence on which the district court relied. *See State v. Hodge,* 2008 UT App 409, ¶ 17, 196 P.3d 124 ("To demonstrate that the evidence is insufficient, Defendant must first marshal the evidence in support of the verdict. To do this, Defendant must 'present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings [he] resists,' and then 'ferret out a fatal flaw in the evidence.'" (alteration and emphasis in original) (quoting *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct. App.1991)) (additional citations and internal quotation marks omitted)); *see also Kimball v. Kimball,* 2009 UT App 233, ¶ 20 n. 5, 217 P.3d 733 ("If there is some supportive evidence, once that evidence is marshaled it is the challenger's burden to show the 'fatal flaw' in that supportive evidence, and explain why the evidence is legally insufficient to support the finding. Examples of such legal insufficiency might include that testimony was later stricken by the court; that a document was used for impeachment only and had not been admitted as substantive evidence; that a document was not properly admitted because it did not qualify under the business record exception to the hearsay rule; and that testimony that seems to support a finding was recanted on cross-examination." (citation omitted)); *Majestic Inv. Co.,* 818 P.2d at 1315 ("After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate

---

2.  Because Defendant does not make any separate arguments under the Utah Constitution, we consider his appeal only under the protections afforded by the United States Constitution. *See State v. Worwood,* 2007 UT 47, ¶¶ 14, 18, 164 P.3d 397 (determining that the greater protections provided by the Utah Constitution will only

be addressed if the argument is properly preserved in the trial court and separately briefed on appeal); *State v. Despain,* 2007 UT App 367, ¶ 12, 173 P.3d 213 ("In the absence of separate and distinct argument under the Utah Constitution, we consider [the d]efendant's claims only under the Federal Constitution.").

court that the court's finding resting upon the evidence is clearly erroneous.").

■ ¶ 4 Rather than pointing to a flaw in the evidence, Defendant essentially urges us to reweigh the credibility of the witnesses.[3] We decline to do so. *See generally State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650 ("Since a district court is in a unique position to assess the credibility of witnesses and weigh the evidence, the court of appeals may not substitute its judgment as to a factual question unless the district court's finding is clearly erroneous." (citation omitted)). The district court clearly determined the agent's testimony was more credible than Defendant's testimony, as demonstrated by the district court's factual finding that "Defendant was parked parallel to the curb in front of the residence and as he was pulling away from the curb the agent observed that he failed to use his turn signal."[4] The district court also determined that Agent Beck transmitted this information to Officer Conners, who then initiated the stop. Because Defendant points to no flaw in the evidence, we determine that the district court's findings are supported by legally sufficient evidence, and we use those factual findings to determine whether the district court correctly denied Defendant's motion to suppress. *See generally Kimball*, 2009 UT App 233, ¶ 20 n. 5, 217 P.3d 733 ("No matter what contrary facts might have been found from all the evidence, our deference to the trial court's pre-eminent role as fact-finder requires us to take the findings of fact as our starting point, unless particular findings have been shown, in the course of an appellant's meeting the

marshaling requirement, to lack legally adequate evidentiary support.").

**B. Based on the District Court's Findings, the Traffic Stop Was Constitutional.**

■ ¶ 5 " '[S]topping an automobile and detaining its occupants constitutes a "seizure" within the meaning of [the Fourth and Fourteenth] Amendments.' " *State v. Preece*, 971 P.2d 1, 4 (Utah Ct.App.1998) (alterations in original) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). "While the Constitution does not forbid all searches and seizures, it does forbid those that are unreasonable." *State v. Biggs*, 2007 UT App 261, ¶ 10, 167 P.3d 544. "Under the Fourth Amendment, a police officer is justified in stopping a vehicle when the officer observes the driver commit a traffic violation, or when the officer has a reasonable articulable suspicion that the driver committed or is about to commit a crime, such as transporting drugs." *State v. Humphrey*, 937 P.2d 137, 141 (Utah Ct.App.1997); *accord State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994). "The concept of reasonable articulable suspicion is not self-defining. Therefore, courts look to the totality of the circumstances present at the time of the stop to determine if there was an objective basis for suspecting criminal activity." *Humphrey*, 937 P.2d at 141. Because an agent observed Defendant pulling away from the curb without signaling, the district court correctly determined that Defendant's stop for the minor traffic violation was constitutionally valid. *See id.*

---

**3.** Defendant also argues that the traffic stop was a pretext. Although the district court may consider an officer's subjective intent when evaluating the credibility of the officer's stated reason for stopping a defendant, *see State v. Lopez*, 873 P.2d 1127, 1138–39 (Utah 1994), we will not disturb that credibility determination unless the defendant establishes that the court clearly erred in making its factual findings. *See State v. Applegate*, 2008 UT 63, ¶ 5, 194 P.3d 925. Nevertheless, this is not a case where the officer initiated a traffic stop in an attempt to obtain reasonable suspicion to further investigate a different crime, but rather, the agents and officer could have based the stop on either the observed traffic violation committed by Defendant *or* the agents'

reasonable suspicion that Defendant was illegally possessing and transporting drugs. *See Lopez,* 873 P.2d at 1132.

**4.** Although Defendant acknowledges that both Agent Beck and Agent Burell stated that Defendant had not signaled, the district court's findings stated that "the *agent* observed that [Defendant] failed to use his signal." (Emphasis added.) However, for purposes of our analysis, so long as either agent observed Defendant's failure to signal and the district court believed that testimony over Defendant's testimony, the stop for Defendant's failure to signal was constitutional.

II. Defendant's Stop Based on the Agents' Reasonable Suspicion of Drug Possession and Transportation Was Also Constitutional.

■ ¶ 6 Defendant requests that we evaluate the reasonableness of the stop and the scope of the stop, including the subsequent arrest, based solely on the stop for a minor traffic violation. At oral argument, Defendant's counsel also urged us to consider the reason the agents initially gave for justifying the stop, i.e., the traffic violation. However, we "look to the totality of the circumstances present at the time of the stop to determine if there was an objective basis for suspecting criminal activity," *see id.*, rather than considering only selective facts or the agents' subjective intent.

¶ 7 Here, "there was an objective basis for suspecting" that Defendant not only committed a traffic offense but was also committing a crime by possessing and transporting drugs "at the time of the stop." *See id.* Prior to stopping Defendant, Agent Beck, who had been working at the Weber Morgan Narcotics Strike Force for three years and had been a police officer for eight years, had received information from a confidential informant (the CI), who had previously provided Agent Beck and another officer with information that led to criminal prosecutions. The CI provided Agent Beck with a specific address to which Defendant would be traveling in his green Dodge truck. The CI advised the police that the Defendant's truck contained a hidden compartment in the driver's side door panel, which would be used to transport approximately ten grams of methamphetamine that evening. Agent Burrell went with Agent Beck to the address the CI identified; Agent Beck recognized the address as a suspected "drug house" and considered at least one person living at the address to be involved in narcotics distribution. Approximately thirty minutes after Agent Beck received the information from the CI, Agents Beck and Burrell saw Defendant arrive at that address in a green Dodge truck, enter the residence for approximately five to ten minutes, leave the residence, and pull away from the curb without properly signaling. The CI then called Agent Beck

and told him that Defendant was leaving the residence and that he still had the drugs in the secret compartment in the driver's side door. Agent Beck believed, based on this information, that the CI had personal knowledge of the information.

■ ¶ 8 "'Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the totality of the circumstances....'" *Humphrey*, 937 P.2d at 141 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)) (additional internal quotation marks omitted). Agent Beck could reasonably rely on the CI's information because it was specific, it appeared to be based on first-hand observations, and Agent Beck had a history with the CI wherein Agent Beck had used the CI's information in the past to make arrests that led to criminal prosecutions. *See Salt Lake City v. Bench*, 2008 UT App 30, ¶ 14, 177 P.3d 655 ("We consider three factors to determine the reliability of an informant's tip: (1) the type of tip or informant involved; (2) whether the informant gave enough detail about the observed criminal activity to support a stop; and (3) corroboration of the information by law enforcement through a police officer's personal observations." (internal quotation marks omitted)). Additionally, Agent Beck was able to personally corroborate some of the details given to him by the CI. *See id.* Therefore, the objective facts known to Agent Beck support a reasonable suspicion that Defendant possessed and was transporting drugs. Officer Conner, who initiated the stop, was justified in relying on Agent Beck's determination that reasonable suspicion existed. *See State v. Roybal*, 2010 UT 34, ¶ 14, 232 P.3d 1016 (stating that "under certain circumstances the officer may rely on other sources of information such as bulletins[ ] or flyers received from other law enforcement sources, so long as the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying the stop" and defining a "flyer" as "any information intended to prompt investigation that is transmitted through police channels, regardless of method" (alteration and emphasis in original) (in-

ternal quotation marks omitted)). Thus, we determine that the stop of Defendant was constitutionally valid.

### III. Defendant's Arrest, Supported by Probable Cause, Was Constitutional.

¶ 9 The same facts that justify the stop of Defendant's vehicle also justify the scope of the stop, including Defendant's subsequent arrest. Once more, Defendant argues that his alleged failure to signal did not justify the stop and detention. However, we do not limit our review of the agents' and officer's (collectively, the agents) actions based on Defendant's failure to signal; instead, we view the scope of the stop and the arrest under the totality of the circumstances. *See State v. Despain*, 2007 UT App 367, ¶ 9, 173 P.3d 213 ("The validity of the probable cause determination is made from the objective standpoint of a prudent, reasonable, cautious police officer ... guided by his experience and training. However, we do not examine these facts in isolation, but rather, we examine the totality of the circumstances." (omission in original) (citations and internal quotation marks omitted)). Thus, we consider all the information that the agents knew about Defendant's alleged possession and transportation of drugs and determine whether the agents' actions in arresting Defendant were constitutionally valid based on that information.

¶ 10 " '[T]he [United States] Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense.' " *State v. Trane*, 2002 UT 97, ¶ 26, 57 P.3d 1052 (alterations in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).

The United States Supreme Court defined probable cause justifying an arrest as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* ¶ 27 (quoting *DeFillippo*, 443 U.S. at 37, 99 S.Ct. 2627); *see also Despain*, 2007 UT App 367, ¶ 9, 173 P.3d 213 ("[T]o justify a warrantless arrest an officer must have probable cause ... to believe that the suspect has committed or is committing an offense. [P]robable cause is only the probability, and not a prima facie showing, of criminal activity, and it does not demand any showing that such a belief be correct or more likely true than false." (alterations and omission in original) (citations and internal quotation marks omitted)).

¶ 11 Because the facts and circumstances known to the agents support a reasonable belief that Defendant was engaged in criminal activity, i.e., possessing and transporting an illegal drug, they had probable cause to detain and arrest Defendant. Thus, we determine that the subsequent detention and arrest following the stop were constitutionally valid.

### IV. The Search of Defendant's Truck Was Constitutional Based on the Automobile Exception.

¶ 12 Finally, Defendant argues that the search of his truck without a warrant also violated his Fourth Amendment rights. Defendant argues that there were no exigent circumstances to justify the search, that it was not permitted as a search incident to arrest, and that the inventory search exception, which is allowed when a vehicle is impounded, is inapplicable. Nevertheless, we determine that the automobile exception to the warrant requirement applies here to validate the search. Under the automobile exception to the warrant requirement, a warrantless search is allowed " '[i]f a car is readily mobile and probable cause exists to believe it contains contraband.' " [5] *Despain*,

---

5. The district court made a conclusion of law that stated,

The Court finds that because the vehicle was readily mobile at the time of the stop and because the Defendant was alerted to the po-

lice presence when he was arrested, there existed exigent circumstances sufficient to allow police to search the motor vehicle for the contraband without first obtaining a search warrant.

2007 UT App 367, ¶ 13, 173 P.3d 213 (alteration in original) (quoting *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (per curiam)). "This exception permits an officer to search not only the vehicle, but also '*its contents* that may conceal the object of the search[,] ... [including] *all* containers within a car, without a showing of individualized probable cause for each one.' " *Id.* (alterations, omission, and emphases in original) (quoting *Wyoming v. Houghton,* 526 U.S. 295, 301–02, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)) (additional internal quotation marks omitted). "The United States Supreme Court has now unequivocally stated that 'under [its] established precedent, the "automobile exception" has no separate exigency requirement.' " *Id.* ¶ 14 (alteration in original) (quoting *Dyson,* 527 U.S. at 466, 119 S.Ct. 2013).

¶ 13 Defendant has not challenged the district court's finding that Defendant's truck was "readily mobile," *see id.* ¶ 13, and we agree with the district court that the agents had probable cause to believe that Defendant's truck contained contraband. The CI gave Agent Beck specific information regarding the color and make of the truck, as well as where the drugs would be located within the truck. Agent Beck corroborated part of this information when the truck arrived at the address given by the CI, an address that Agent Beck knew had previously been associated with narcotics. Given these facts, the agents had probable cause to search the truck because the automobile exception requirements were met, i.e., the truck was readily mobile and probable cause existed to believe that the truck contained contraband. *See id.* Thus, the search of Defendant's truck was constitutional.

¶ 14 In conclusion, because the stop, arrest, and search were constitutionally valid, we affirm the district court's denial of Defendant's motion to suppress evidence.

Although the court began by stating the first element of the automobile exception, the court discussed exigent circumstances, which is no longer an element of the automobile exception. *See State v. Despain,* 2007 UT App 367, ¶ 14, 173 P.3d 213. However, because it is apparent from the record that probable cause existed to believe that Defendant's truck contained contraband, we

¶ 15 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and STEPHEN L. ROTH, Judge.

affirm that the search was constitutionally permissible without fully accepting the district court's reasoning. *See id.* ¶ 11 ("[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record." (alteration in original) (internal quotation marks omitted)).