2016 UT App 42

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ZACHARY RIGBY,
Appellant.

Opinion
No. 20140553-CA
Filed March 3, 2016

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 135100370

Brandon J. Smith, Attorney for Appellant

James Swink and Aaron M. Jossie, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE GREGORY K. ORME and SENIOR JUDGE JAMES Z. DAVIS concurred.[1]

ROTH, Judge:

¶1     Zachary Rigby appeals his conviction for driving with a measurable controlled substance in the body and possession or use of a controlled substance, both class B misdemeanors. Rigby challenges the trial court's denial of his motion to suppress evidence that the police found during a warrantless search of his vehicle. Rigby contends that the Utah Constitution provides its

---

1. Senior Judge James Z. Davis began his work on this case as a member of the Utah Court of Appeals. He retired from the court, but thereafter became a Senior Judge. He completed his work on this case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

citizens greater protection against unreasonable searches than the United States Constitution because Utah courts have required police officers to have both probable cause and exigent circumstances when performing a warrantless search under the automobile exception. He concedes the officers had probable cause to search his automobile following the traffic stop but asserts that they violated his constitutional rights by conducting the search without a warrant in the absence of exigent circumstances. Because we are reluctant to diverge from our supreme court's historical pattern of paralleling federal search and seizure law, we conclude that law enforcement officers were only required to have probable cause to justify the search of Rigby's vehicle under the automobile exception to the warrant requirement. Accordingly, we affirm.

BACKGROUND

¶2     Ordinarily, "[w]e recite the facts in the light most favorable to the trial court's findings from the suppression hearing." *State v. Giron*, 943 P.2d 1114, 1115 (Utah Ct. App. 1997) (citation and internal quotation marks omitted); *see also State v. Patefield*, 927 P.2d 655, 656 (Utah Ct. App. 1996). But for purposes of Rigby's motion to suppress and, by extension, this appeal, both parties have stipulated to the facts as presented in the original police report. "A stipulation of fact filed with and accepted by a court . . . is conclusive of all matters necessarily included in the stipulation." *Yeargin, Inc. v. Auditing Div. of Utah State Tax Comm'n*, 2001 UT 11, ¶ 20, 20 P.3d 287 (citation and internal quotation marks omitted); *see also Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶ 14, 296 P.3d 709 ("[W]hen a court adopts a stipulation of the parties, the issues to which the parties have stipulated become settled . . . ." (citation and internal quotation marks omitted)). Therefore, we recite the facts in accordance with the parties' stipulation.

¶3 On March 28, 2013, a police officer pulled Rigby's automobile over for a stop sign violation. Upon approaching the vehicle, the police officer could "[i]immediately . . . detect[] the odor of both burnt and fresh marijuana coming from the vehicle." Rigby and the two other occupants were "exhibiting physical indicators of recent marijuana use, including bloodshot eyes, droopy eyelids and a stoned look," along with acting "extremely nervous" during the traffic stop. Additional officers, including a K9 officer, were called to the location. The officer who initiated the traffic stop then "explained [to Rigby] that [he] was going to be searching the vehicle, not only based on the fact that [he] could smell the marijuana in the vehicle but because the drug dog had given a positive indication as well." Two officers then searched Rigby's vehicle; they recovered a small metal pipe with marijuana residue and plastic bags containing fresh marijuana. Rigby was arrested and charged with possession of drug paraphernalia, a class A misdemeanor; driving with a measurable controlled substance in the body and possession or use of a controlled substance, both class B misdemeanors; and failure to stop at a stop sign, a class C misdemeanor.

¶4 Rigby filed a motion to suppress "[a]ll evidence seized and any statement obtained" "as a result of the unlawful searches" conducted "in violation of the Utah Constitution." At the evidentiary hearing on Rigby's motion, he conceded that the "odor of marijuana was sufficient" to establish probable cause but argued that exigent circumstances were also "required in order to justify a warrantless search" under the automobile exception. The trial court denied Rigby's motion to suppress, finding that "the search was reasonable under the circumstances and such evidence was lawfully obtained under the automobile exception to the warrant requirement."

¶5 Rigby subsequently pled guilty to one count of driving with a measurable controlled substance in the body, *see* Utah Code Ann. § 41-6a-517(2) (LexisNexis 2014), and one count of possession or use of a controlled substance, *see id.* § 58-37-

8(2)(a)(i).[2] In entering his pleas, Rigby reserved the right to appeal the trial court's denial of his suppression motion. *See State v. Sery*, 758 P.2d 935, 938 (Utah Ct. App. 1988) (describing how a conditional plea "specifically preserves the suppression issue for appeal and allows withdrawal of the plea if defendant's arguments in favor of suppression are accepted by the appellate court") (citations omitted).

## ISSUE AND STANDARD OF REVIEW

¶6 On appeal, Rigby argues that although the United States Constitution and the Utah Constitution contain nearly identically phrased protections against unreasonable searches, the Utah Constitution provides greater protection to its citizens by requiring law enforcement officers to have both probable cause and exigent circumstances before conducting a warrantless search under the automobile exception to the warrant requirement, even though the United States Supreme Court has held that under the federal constitution the automobile exception requires only probable cause. "Matters of constitutional interpretation are questions of law that we review for correctness, and we provide no deference to the district court's legal conclusions." *State v. Gonzalez-Camargo*, 2012 UT App 366, ¶ 15, 293 P.3d 1121 (citation and internal quotation marks omitted); *see also Menzies v. State*, 2014 UT 40, ¶ 27, 344 P.3d 581 ("Constitutional issues . . . are questions of law that we review for correctness . . . ." (first omission in original) (citation and internal quotation marks omitted)).

---

2. Because the statutory provisions in effect at the relevant times do not differ materially from the statutory provisions now in effect, we cite the current version of the Utah Code for convenience.

ANALYSIS

¶7    Both the United States Constitution and the Utah Constitution contain nearly identical provisions safeguarding an individual's right against unreasonable searches and seizures.[3] Both protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by the government. U.S. Const. amend. IV; *see also* Utah Const. art. I, § 14. Some time ago, the Utah Supreme Court observed that "Article I, section 14 of the Utah Constitution reads nearly verbatim with the fourth amendment, and thus [the] Court has never drawn any distinctions between the protections afforded by the respective constitutional provisions. Rather, the Court has always considered the protections afforded to be one and the same." *State v. Watts*, 750 P.2d 1219, 1221 (Utah 1988). The question presented here is whether Utah courts should continue to follow this principle and track the relatively recent evolution of the automobile exception under federal law or chart its own path under the Utah Constitution. To address this question, we first trace the history of the automobile exception under both federal and state case law. Next we examine the status of the automobile exception under federal law in light of the United States Supreme Court's decision in *Pennsylvania v. Labron*, 518 U.S. 938 (1996) (per curiam). Finally, we consider whether Utah is likely to continue to track federal law after *Labron* with regard to the automobile exception or chart a new path under the Utah Constitution.

---

3. The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

(continued…)

## I. The Automobile Exception to the Warrant Requirement

¶8    Because warrantless searches are "per se unreasonable," *Katz v. United States*, 389 U.S. 347, 357 (1967), "[p]olice officers generally need a warrant to search a place in which a person has a reasonable expectation of privacy," *State v. Boyles*, 2015 UT App 185, ¶ 10, 356 P.3d 687 (citing *Franks v. Delaware*, 438 U.S. 154, 164 (1978)); *see also id.* (citing *Franks*, 438 U.S. at 164) (noting that "[b]efore issuing a search warrant, a magistrate must determine that probable cause exists to conduct the search"). "There are, of course, exceptions to the general rule . . . one [of which] is the so-called 'automobile exception' . . . ." *California v. Carney*, 471 U.S. 386, 390 (1985). Historically, under the automobile exception, police were permitted to search an automobile without a warrant so long as both probable cause and exigent circumstances existed. *See, e.g., Chambers v. Maroney*, 399 U.S. 42, 48–51 (1970); *State v. Limb*, 581 P.2d 142, 144 (Utah 1978).

---

(…continued)

> and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Utah Constitution is phrased very similarly:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

Utah Const. art. I, § 14.

A.    The Automobile Exception Under Federal Case Law

¶9    In 1925, the United States Supreme Court decided *Carroll v. United States*, 267 U.S. 132 (1925), the seminal case addressing the automobile exception to the Fourth Amendment's warrant requirement. In *Carroll*, the Court determined that while an individual has a constitutionally protected privacy interest in an automobile, the degree of protection is lessened "because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153. This mobility principle has continued to be a factor in the Supreme Court's approach to automobile search cases since *Carroll*. *See, e.g., Labron*, 518 U.S. at 940; *New York v. Class*, 475 U.S. 106, 112–13 (1986); *Carney*, 471 U.S. at 392–93; *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976); *Cardwell v. Lewis*, 417 U.S. 583, 588–89 (1974); *Cady v. Dombrowski*, 413 U.S. 433, 441–42 (1973); *Coolidge v. New Hampshire*, 403 U.S. 443, 459–60 (1971); *Chambers*, 399 U.S. at 52; *Cooper v. California*, 386 U.S. 58, 59 (1967).

¶10    The Court has recognized, however, that "ready mobility is not the only basis for the [automobile] exception." *Carney*, 471 U.S. at 391. Rather, the exception is also justified because of the "reduced expectations of privacy" arising from the "pervasive regulation of vehicles capable of traveling on the public highways." *Id.* at 392 (citing *Cady*, 413 U.S. at 440–41); *see also Arizona v. Gant*, 556 U.S. 332, 345 (2009) (recognizing that "a motorist's privacy interest in his vehicle is less substantial than in his home"); *Wyoming v. Houghton*, 526 U.S. 295, 303–07 (1999) (holding that both drivers and passengers have a reduced expectation of privacy in an automobile); *Class*, 475 U.S. at 113 ("[A]utomobiles are justifiably the subject of pervasive regulation by the State."); *United States v. Chadwick*, 433 U.S. 1, 12–13 (1977) ("One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects.") (citation omitted), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *Cardwell*, 417 U.S. at 590.

¶11 Historically, the automobile exception has required two circumstances. First, there must be probable cause for a search. *See Chambers*, 399 U.S. at 48 ("[A]utomobiles . . . may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause . . . ."). And second, there must be exigent circumstances. *See id.* at 50–51 ("But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. . . . Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search."). The required exigency was usually found to inhere in a factor fundamental to the exception itself, i.e., the characteristic mobility of an automobile. *See, e.g.*, *Acevedo*, 500 U.S. at 569 (citing *Carroll*, 267 U.S. at 158–59) (stating that "a warrantless search of an automobile, based upon probable cause to believe that the vehicle contained evidence of crime in light of an exigency arising out of the likely disappearance of the vehicle, [does] not contravene the Warrant Clause of the Fourth Amendment").

¶12 In 1996, however, the Supreme Court concluded that the warrantless search of an automobile no longer required separate consideration of exigent circumstances, so long as there was probable cause for the search. *Labron*, 518 U.S. at 940. The Court held that "ready mobility [was] exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear." *Id.* (citing *Carney*, 471 U.S. at 390–91). In reaching this conclusion the Court reasoned that in addition to the mobility principle, its prior recognition of the "reduced expectation of privacy in an automobile" justified recasting the description of the automobile exception to permit a warrantless search "[i]f a car is readily mobile and probable cause exists . . . without [anything] more." *Id.* (citing *Carney*, 471 U.S. at 393).

B.     The Automobile Exception Under Utah Case Law

¶13    Historically, Utah case law has mirrored federal case law with respect to the automobile exception to the warrant requirement. Utah cases, like their federal counterparts, have recognized that "[w]arrantless searches are per se unreasonable unless undertaken pursuant to a recognized exception to the warrant requirement." *State v. Brown*, 853 P.2d 851, 855 (Utah 1992) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). Our case law has also echoed federal case law in recognizing that "[t]here are . . . several exceptions to the warrant requirement . . . includ[ing] . . . [the] search of an automobile based on probable cause." *State v. Hygh*, 711 P.2d 264, 267 (Utah 1985) (citing *Chambers*, 399 U.S. 42); *see also State v. Limb*, 581 P.2d 142, 144–45 (Utah 1978) (discussing the automobile exception to the warrant requirement and quoting *Chambers*, 399 U.S. at 51, with approval).

¶14    Our cases have also described the rationale for the automobile exception much like federal cases have. For example, in the 1948 case *City of Price v. Jaynes*, while discussing the validity of a city ordinance modeled after the Fourth Amendment, our supreme court recognized that under federal law an individual has a lessened degree of protection in some instances based on whether the place to be searched is mobile. 191 P.2d 606, 608 (Utah 1948). And in *City of Price* the Utah Supreme Court enunciated and followed the principles first announced in *Carroll*:

> [The Fourth Amendment] has been construed practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile for contraband goods where it is not practicable to serve a warrant

because the vehicle can be quickly moved out of the jurisdiction in which the warrant is sought.

*Id.* at 608 (quoting *Carroll*, 267 U.S. at 153); *see also State v. Dorsey*, 731 P.2d 1085, 1087 (Utah 1986) (citing *Carroll*, 267 U.S. 132, ("It has long been held that warrantless vehicle searches are not invalid under the Fourth Amendment if probable cause for a search exists.")). And subsequent to *City of Price*, the court has repeatedly referred to the mobility principle as justification for the automobile exception. *See, e.g., State v. Baker*, 2010 UT 18, ¶ 11, 229 P.3d 650; *State v. James*, 2000 UT 80, ¶ 10, 13 P.3d 576; *State v. Anderson*, 910 P.2d 1229, 1234–37 (Utah 1996) (plurality opinion); *Limb*, 581 P.2d at 144–45; *State v. Farnsworth*, 519 P.2d 244, 247 (Utah 1974); *State v. Shields*, 503 P.2d 848, 849 (Utah 1972).

¶15    Further, like the federal courts, our supreme court has recognized that in addition to an automobile's ready mobility, the automobile exception finds support in reduced privacy expectations. For instance, in *State v. Baker*, the Utah Supreme Court noted that the "automobile exception to the warrant rule arises because occupants of a vehicle have a lesser expectation of privacy due to the mobile nature of vehicles and their highly regulated status." 2010 UT 18, ¶ 11 (alteration, citation, and internal quotation marks omitted); *accord James*, 2000 UT 80, ¶ 10 ("Due to the mobile nature of vehicles and their highly-regulated status, persons traveling in vehicles have a lesser expectation of privacy than they would have within a private dwelling."); *see also State v. Lopez*, 873 P.2d 1127, 1131–34 (Utah 1994); *State v. Schlosser*, 774 P.2d 1132, 1135 (Utah 1989).

¶16    And like the federal courts until *Labron*, the Utah Supreme Court has historically described the automobile exception as requiring both probable cause and exigent circumstances to justify a police officer in the warrantless search of an automobile. *See, e.g., State v. Christensen*, 676 P.2d 408, 411 (Utah 1984) ("For [the automobile] exception to apply, the police must have

probable cause to believe that the automobile contains either contraband or evidence of a crime and that they may be lost if not immediately seized."); *see also State v. Larocco*, 794 P.2d 460, 470 (Utah 1990) (plurality opinion) (approving the logic of *Christensen*, 676 P.2d 408, and re-iterating the requirement that police officers have both probable cause and exigent circumstances to justify a search under the automobile exception); *Limb*, 581 P.2d at 144 (citing *Carroll*, 267 U.S. 132, with approval and holding that probable cause and exigent circumstances existed to justify a warrantless search of an automobile). Also in line with the federal approach, the Utah Supreme Court has recognized that the required exigency generally arises from the inherent mobility of an automobile. *See Shields*, 503 P.2d at 849 ("In exigent circumstances, the judgment of a police officer as to probable cause will serve as sufficient authorization for a search, i.e., a search warrant is unnecessary where there is probable cause to search an automobile stopped on the highway, for the car is movable, . . . and the car's contents may never be found again if a warrant must be obtained.").

II. The Automobile Exception Under *Pennsylvania v. Labron*

¶17    On July 1, 1996, the United States Supreme Court decided the companion cases of *Pennsylvania v. Kilgore* and *Pennsylvania v. Labron* in a consolidated opinion. *See Pennsylvania v. Labron*, 518 U.S. 938 (1996) (per curiam). In both cases, the Pennsylvania Supreme Court had held that the Fourth Amendment to the United States Constitution required law enforcement officers to obtain a warrant before searching a vehicle unless both probable cause and exigent circumstances were present. *Id.* at 938–39. In particular, the Pennsylvania Supreme Court had held that the warrantless search of Labron's vehicle was unjustified because although law enforcement officers had probable cause to search the trunk of the vehicle for suspected drug activity, there were no exigent circumstances justifying the search because "the police had time to secure a warrant." *Id.* at 939–40. In a relatively short per curiam decision, the Supreme Court concluded that it

was incorrect under the Fourth Amendment for courts to require law enforcement officers to have *both* probable cause and exigent circumstances for the warrantless search of an automobile. *Id.* The Court began its analysis with a brief review of the history of the Fourth Amendment's automobile exception. *Id.* (first citing *California v. Carney*, 471 U.S. 386, 390–91 (1985); then citing *Carroll*, 267 U.S. 132). The Court noted that the first cases underlying the automobile exception "were based on the automobile's 'ready mobility'" because "'ready mobility[]' [is] an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear." *Id.* But the Court explained that "[m]ore recent cases provide a further justification [for the automobile exception]" based on an "individual's reduced expectation of privacy in an automobile[] [because of] . . . its pervasive regulation." *Id.* (citing *Carney*, 471 U.S. at 391–92). The Court concluded, "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Id.* (citing *Carney*, 471 U.S. at 393). The Court has subsequently stated that *Labron* stands for the rule that under federal law, "the 'automobile exception' has no separate exigency requirement." *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999) (per curiam) (discussing *Labron*, 518 U.S. 938).[4]

---

4. In *Maryland v. Dyson*, 527 U.S. 465 (1999) (per curiam), the Supreme Court stated that it had been "clear" since *United States v. Ross*, 456 U.S. 798 (1982), that the automobile exception had no exigency requirement and characterized *Labron* as simply reiterating that principle:

> The Fourth Amendment generally requires police to secure a warrant before conducting a search. *California v. Carney*, 471 U.S. 386, 390–91 (1985). As we recognized nearly 75 years ago in *Carroll v. United States*, 267 U.S. 132 (1925), there is an exception to this requirement for searches of

(continued…)

### III. The Automobile Exception Under Article I, Section 14 of the Utah Constitution

¶18    The Utah Supreme Court has not specifically considered the effect of *Labron* on Utah law. And though we have

---

(…continued)

> vehicles. And under our established precedent, the "automobile exception" has no separate exigency requirement. We made this clear in *United States v. Ross*, 456 U.S. 798, 809 (1982), when we said that in cases where there was probable cause to search a vehicle "a search is not unreasonable if based on facts that would justify the issuance of a warrant, *even though a warrant has not been actually obtained*." In a case with virtually identical facts to this one (even down to the bag of cocaine in the trunk of the car), *Pennsylvania v. Labron*, 518 U.S. 938 (1996) (per curiam), we repeated that the automobile exception does not have a separate exigency requirement: "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." Id. at 940.

*Dyson*, 527 U.S. at 466–67 (emphasis in original). But *Labron* itself did not mention *Ross* and seemed at the time to mark a point of departure from the exigency requirement. Certainly, the conclusion *Dyson* draws from *Ross* seems more apparent in *Labron*'s clarifying light than it may have been before then. It is tempting to surmise that *Labron*'s per curiam nature may have signaled that the Court did not consider its decision to be so much a departure from the past as an acknowledgement that, given its foundation in the mobility principle, the exigency requirement may already have largely lost its role as an independent component of the automobile exception.

mentioned *Labron* on occasion, this court has not had the opportunity to specifically analyze Article I, Section 14 of the Utah Constitution in light of that decision. In fact, each of the few times this court has cited *Labron*, we did so to support a conclusion—in the context of analyzing federal law—that a law enforcement officer's search of an appellant's automobile was justified under the automobile exception to the Fourth Amendment's warrant requirement because the officer had probable cause. *See State v. Despain*, 2007 UT App 367, ¶¶ 14, 16, 173 P.3d 213 (recognizing that the requirements to justify a search under the automobile exception have "fluctuated in the past," but ultimately relying on both *Dyson* and *Labron* to conclude that "federal law ha[d] been clarified" and therefore "[t]he officers' search . . . was justified under the automobile exception to the Fourth Amendment[] . . . because the officers had probable cause"); *State v. Griffith*, 2006 UT App 291, ¶¶ 6–8, 141 P.3d 602 (relying on *Dyson* and *Labron* to conclude that because the defendant's vehicle was mobile the officer needed only probable cause to search the vehicle under the Fourth Amendment); *State v. Mehew*, 2003 UT App 166U, para. 3 (citing *Labron*, 518 U.S. at 940) (holding that because the defendant's vehicle was mobile and probable cause existed the warrantless search of the vehicle was valid under the automobile exception). Further, although not specifically citing *Labron*, we have applied the rule *Labron* recognized—that the automobile exception, under federal law, has no separate exigency requirement—on a number of occasions. *See, e.g.*, *State v. Juma*, 2012 UT App 27, ¶ 9, 270 P.3d 564; *State v. Butler*, 2011 UT App 281, ¶ 12, 263 P.3d 463; *In re D.A.B.*, 2009 UT App 169, ¶ 7, 214 P.3d 878; *State v. Griffith*, 2006 UT App 291, ¶ 6, 141 P.3d 602. And it appears that the only time we have been asked to consider whether Article I, Section 14 of the Utah Constitution would yield a more restrictive interpretation of the automobile exception than *Labron*, we declined to do so because the state constitutional issues were inadequately briefed. *See Despain*, 2007 UT App 367, ¶ 12 (explaining that the "[d]efendant mentioned both the Utah and United States Constitutions in his opening brief," but "did not

conduct a separate analysis of the protections afforded by each" and, as a consequence, this court "refrained from engaging in [a] state constitutional analysis" of the automobile exception and affirmed the district court based on *Labron*'s holding that the Fourth Amendment required only probable cause for the warrantless search of an automobile).

¶19 Here, Rigby acknowledges that both "the U.S. Constitution and the Utah Constitution contain almost identical protections against unreasonable searches" and that "in 1996 the U.S. Supreme Court [in *Labron*] changed the requirements under the U.S. Constitution to require probabl[e] cause only," no longer requiring a separate showing of exigency. Rigby argues, however, that "[n]o such decision has been issued regarding the status of the Utah Constitution." And therefore, according to Rigby, "under the Utah Constitution an officer must still have both probable cause and exigent circumstances to justify the warrantless search of an automobile." Unlike the appellant in *Despain*, we believe that Rigby analyzes the issue in a manner sufficient to warrant our consideration of whether, in light of *Labron*, the Utah Constitution now provides its citizens greater protection against unreasonable searches than the United States Constitution by continuing to require that police officers have both probable cause and exigent circumstances to justify a warrantless search under the automobile exception. Rigby primarily draws support for his argument that Utah ought to depart from the federal path with regard to the automobile exception from three opinions, which seem to be the Utah Supreme Court's last ventures into the realm of the Utah Constitution's relationship to the automobile exception prior to *Labron*: *State v. Watts*, 750 P.2d 1219 (Utah 1988), *State v. Larocco*, 794 P.2d 460 (Utah 1990) (plurality opinion), and *State v. Anderson*, 910 P.2d 1229 (Utah 1996) (plurality opinion). We address each case in order to determine whether our supreme court has established a discernible distinction between the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Utah Constitution that may apply here.

A.    State v. Watts

¶20    In *State v. Watts* a majority of the Utah Supreme Court affirmed the appellant's conviction for unlawful production and possession of marijuana. *Watts*, 750 P.2d at 1225. The appellant in *Watts* had unsuccessfully moved the trial court to suppress evidence based upon the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Utah Constitution. *Id.* at 1220. While ultimately holding that private searches did not fall within the protection of the Utah Constitution, the *Watts* court acknowledged and affirmed its historical pattern of interpreting both the federal and the state constitutions as providing identical protections:

> Article I, section 14 of the Utah Constitution reads nearly verbatim with the fourth amendment, and thus this Court has never drawn any distinctions between the protections afforded by the respective constitutional provisions. Rather, the Court has always considered the protections afforded to be one and the same. We do not depart from that view in this case, and hold that unreasonable private searches are not subject to the protection of article I, section 14 of the Utah Constitution.

*Id.* at 1221 (footnotes omitted).

¶21    Although Rigby acknowledges the court's reasoning, he points to a footnote in *Watts* in which the court opined that "choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts." *Id.* at 1221 n.8. Rigby interprets this footnote as indicating that "[t]he *Watts* court reserved the right to distinguish between the protections afforded by the two Constitutions." But the footnote's indication of the court's

willingness to consider a different direction at some point in the future must be considered in light of the majority's unequivocal decision not to "depart . . . from [the court's] consistent refusal . . . to interpret article I, section 14 of [the Utah] constitution in a manner different from the fourth amendment to the federal constitution." *Id.* Therefore, the supreme court's statement in *Watts* reinforces Utah's historical pattern of tracking federal law in this area both in principle and in practice while keeping open the possibility of departing from that pattern, should the circumstances undergirding it change in some significant way. *Cf. State v. Worwood*, 2007 UT 47, ¶ 11, 164 P.3d 397 ("In cases involving Fourth Amendment questions under the United States Constitution, we review mixed questions of law and fact under a correctness standard in the *interest of creating uniform legal rules for law enforcement*." (emphasis added)).

B.      State v. Larocco

¶22    In *State v. Larocco* a plurality of the supreme court (two justices concurring and one concurring only in the result) urged departure from continued reliance on federal jurisprudence as the basis for interpreting Article I, Section 14 of the Utah Constitution. *Larocco*, 794 P.2d at 470–71. The plurality reasoned that although both federal and Utah courts had historically interpreted the automobile exception to require both probable cause and exigent circumstances, *id.* at 470, exigency had become essentially a given based on a too-simplistic notion about the ready mobility of automobiles, *id.* at 469. The *Larocco* plurality thus concluded that an automobile's mere potential for mobility ought no longer to be sufficient to satisfy the exigency requirement under the Utah Constitution. Rather, a two-step process was required: first, it should be established that officers had probable cause for a search; then in order to meet the required level of exigency, "[t]he next step requires justification of the warrantless search by showing either that the procurement of a warrant would have jeopardized the safety of the police officers or that the evidence was likely to have been

lost or destroyed." *Id.* at 470. In other words, for the automobile exception to apply, the State must go beyond the general concept of ready mobility and show exigency particularized to the actual circumstances at hand. Thus, in *Larocco*, there was probable cause for a search, but the State failed to show that the presumably stolen automobile, while operable and likely mobile, would no longer have been available to search if the officers had taken the time to obtain a warrant. As a result, the warrantless search was not justified. *Id.* at 470–71.

¶23 But *Larocco*'s plurality status "represents the view of only two justices . . . and is therefore not the law of this state." *Anderson*, 910 P.2d at 1234 n.5. Accordingly, the holding from *Watts* remained "the law of this state." *See id.*; *see also State v. Giron*, 943 P.2d 1114, 1121 (Utah Ct. App. 1997) ("Because *Larocco* was only a plurality opinion, its analysis is not binding."). Therefore, we cannot conclude that the plurality decision in *Larocco* signals our supreme court's intent to interpret the state constitution to provide different protections than the federal constitution. *See State v. Mohi*, 901 P.2d 991, 996 n.3 (noting that "a plurality opinion . . . does not establish precedent"). A subsequent plurality decision, *State v. Anderson*, underscores this notion.

C.      State v. Anderson

¶24 In *State v. Anderson*, issued just months before *Labron*,[5] the Utah Supreme Court was again asked to depart from its practice of interpreting in tandem the search and seizure requirements of the state and federal constitutions in the context of the automobile exception. *See Anderson*, 910 P.2d at 1235. But the *Anderson* plurality rejected the approach taken by the *Larocco*

---

5. *State v. Anderson*, 910 P.2d 1229 (Utah 1996), was issued on February 2, 1996, while *Labron*, 518 U.S. 938, was issued approximately five months later, on July 1, 1996.

plurality and affirmed that Utah would continue to track the federal path in this area: "Because this portion of *Larocco* coincides with federal law, we agree with those who joined the *Larocco* plurality that article I, section 14 of the Utah Constitution requires that warrantless searches of automobiles be justified by a showing of probable cause and exigent circumstances." *Id.* at 1237. Based on this statement, Rigby urges us to acknowledge *Anderson* as the irrefutable last word on the issue. In other words, Rigby argues that even if *Larocco*'s more restrictive plurality approach is not binding, we should conclude at a minimum that the *Anderson* plurality has accurately articulated Utah law just prior to *Labron* as holding that probable cause alone is not sufficient to justify the warrantless search of an automobile but that exigent circumstances are also required. Rigby contends that the *Anderson* court "went into great detail to explain that under both the Federal and Utah constitutions the warrantless search of an automobile required 'both probable cause and exigent circumstances.'" (Quoting *Anderson*, 910 P.2d at 1236.)

¶25    While that is true, *Anderson* does not support Rigby's position as strongly as he contends, because Rigby does not acknowledge the context in which that explanation occurred. Although the *Anderson* plurality recognized that in the past, federal Fourth Amendment law had been "the source of much confusion among judges, lawyers, and police," it went on to explain that our supreme court "ha[s] endeavored toward uniformity in the application of the search and seizure requirements of the state and federal constitutions, particularly since the respective provisions are practically identical," cautioning that "[a]n opposite approach could lead to unfavorable results." *Id.* at 1235–36 (citation and internal quotation marks omitted). In accordance with this principle, recognizing that at the time *Anderson* was issued, federal law "require[d] that such a search be premised on probable cause and exigent circumstances," *id.* at 1237, the plurality concluded that the Utah Constitution required the same: "[T]he Utah

Constitution requires that warrantless searches of automobiles be justified by a showing of probable cause and exigent circumstances," *id.* Thus, rather than fixing the combination of probable cause and exigent circumstances as the invariable components of the automobile exception under the Utah Constitution, *Anderson* can be read to express the plurality's view that the Utah Supreme Court had expressed a distinct and continuing preference to have Article 1, Section 14 interpreted consistently with the Fourth Amendment in order to avoid the "unfavorable results" that a different approach "could lead to." *Id.* at 1235 ("For these reasons, Utah courts should construe article I, section 14 in a manner similar to constructions of the Fourth amendment except in compelling circumstances." (citing, among other cases, *Watts*, 750 P.2d at 1221 & n.8)).

D.     The Current State of the Automobile Exception Under Utah Law

¶26    The plurality decisions in *Larocco* and *Anderson* present two competing approaches. On the one hand, the *Larocco* plurality analyzes the automobile exception to require a complex, policy-based analysis giving due consideration to the principle that the Utah Constitution ought to be independently analyzed with the potential for affording Utah citizens greater liberties than the federal. *Larocco*, 794 P.2d at 469–71. On the other hand, the *Anderson* plurality firmly rejects that approach and urges that the court instead adhere to the historical pattern of following the path of federal law to avoid confusion and "unfavorable results." *Anderson*, 910 P.2d at 1234–37. But although the pluralities in *Larocco* and *Anderson* began an internal dialogue that could eventually lead to changes in Utah's approach, we are effectively left with *Watts* as the supreme court's last majority expression, and therefore what appears to be the court's last word on the automobile exception. And while *Watts* held that the automobile exception required both probable cause and exigent circumstances, its reasoning was firmly based

on the principle of tracking the path set by the United States Supreme Court. *Watts*, 750 P.2d at 1220–21 & n.8.

¶27    Certainly, Rigby's contention that Utah courts ought now to depart from the federal interpretive path and determine that Article I, Section 14 of the Utah Constitution provides Utah citizens with more expansive rights than those guaranteed under the Fourth Amendment to the United States Constitution finds resonance in the language of some prior cases. *See State v. Brake*, 2004 UT 95, ¶ 16 n.2, 103 P.3d 699 (first citing *Anderson*, 910 P.2d at 1234–37; and then citing *Larocco*, 794 P.2d at 469–70) (declining "the implicit invitation" inherent in the circumstances of the case "to revisit the dormant but unresolved debate in this court over the merits of whether and when to depart from federal Fourth Amendment doctrine and chart our own course in the realm of search and seizure law based on the protections afforded by article I, section 14 of the Utah Constitution"); *State v. DeBooy*, 2000 UT 32, ¶ 12, 996 P.2d 546 ("While this court's interpretation of article I, section 14 has often paralleled the United States Supreme Court's interpretation of the Fourth Amendment, we have stated that we will not hesitate to give the Utah Constitution a different construction where doing so will more appropriately protect the rights of this state's citizens."); *Larocco*, 794 P.2d at 465 ("[W]e have by no means ruled out the possibility of [drawing distinctions between the protections afforded by article I, section 14 of the Utah Constitution and the fourth amendment of the United States Constitution]." (quoting *Watts*, 750 P.2d at 1221 n.8)); *Watts*, 750 P.2d at 1221 n.8 ("In declining to depart in this case from our consistent refusal heretofore to interpret article I, section 14 of our constitution in a manner different from the fourth amendment to the federal constitution, we have by no means ruled out the possibility of doing so in some future case. Indeed, choosing to give the Utah Constitution a somewhat different construction may prove to be an appropriate method for insulating this state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts."). But the decades-long

pattern of Utah decisions following the lead of federal law in this area before *Larocco* and *Anderson*—a pattern acknowledged and applied in *Watts*—is established enough that the burden must be on the challenging party to persuade us that a change is justifiable, and Rigby has not carried that burden here. Rather, the strength of that pattern and the very intensity of the disagreement between the *Larocco* and *Anderson* pluralities deter us from concluding that the current court would mark *Labron* as Utah's point of departure from the path of federal law on the automobile exception.

¶28    And even were we tempted to do so,

> as an intermediate court of appeals, we would be reluctant, in any event, to become overly creative in fashioning a state constitutional rule different from the federal rule. Such a task lies more appropriately with the Utah Supreme Court as "the ultimate and final arbiter of the meaning of the provisions in the Utah Declaration of Rights and the primary protector of individual liberties."

*State v. Jackson*, 937 P.2d 545, 550 (Utah Ct. App. 1997) (first quoting *Anderson*, 910 P.2d at 1240 (Stewart, J., concurring in the result); then citing *State v. Larocco*, 742 P.2d 89, 95 n.7 (Utah Ct. App. 1987) (stating that any departure from Fourth Amendment case law "should be announced by our state's supreme court, not this court"), *rev'd on other grounds*, 794 P.2d 460 (Utah 1990)); *cf. DIRECTV v. Utah State Tax Comm'n*, 2015 UT 93, ¶¶ 44–46 (declining to "embark on a constitutional[] . . . journey" when asked to extend federal dormant commerce clause precedent because the United States Supreme Court's current approach does not seem to point in that direction and because it is not the province of the Utah Supreme Court to embark on that journey). Accordingly, we decline to depart from the path of federal law and conclude that under the automobile exception, as interpreted in *Labron*, the law enforcement officers in this case

were only required to have probable cause to justify the search of Rigby's vehicle under the automobile exception to the warrant requirement of either the federal or Utah constitutions. *See State v. Despain*, 2007 UT App 367, ¶¶ 13–16, 173 P.3d 213. Because there is no dispute that the officers here had probable cause for a search, the trial court did not err in denying Rigby's motion to suppress.[6]

CONCLUSION

¶29    For the reasons stated above, the judgment of the trial court is affirmed.

_____

6. Because we follow *Labron*'s lead and conclude that no separate showing of exigent circumstances is required under the automobile exception, we do not reach Rigby's argument that the availability of warrants by telephone or other electronic media means that there was no exigency here as a matter of law. *Cf. State v. Rodriguez*, 2007 UT 15, ¶ 60, 156 P.3d 771 ("[P]ractical considerations associated with warrant acquisition remain central to inquiries into whether exigent circumstances justify a warrantless search."); *State v. Larocco*, 794 P.2d 460, 470 (Utah 1990) (plurality opinion) (recognizing "[t]he amount of time necessary to obtain a warrant" is a factor used to "determin[e] whether circumstances are exigent"); *City of Orem v. Henrie*, 868 P.2d 1384, 1391–92 (Utah Ct. App. 1994) (identifying "the availability of a telephonic warrant" as one consideration when determining whether exigency exists).