FILED
United States Court of Appeals
Tenth Circuit

September 27, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERLIN AYALA,

Defendant-Appellant.

No. 10-5167
(D.C. No. 4:09-CR-00138-CVE-9)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **ANDERSON**, and **HARTZ**, Circuit Judges.

Defendant Erlin Ayala appeals his conviction by a jury for possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine. He argues that the district court erred in denying his motion to suppress and that there was insufficient evidence to support his conviction. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

In October 2009 the federal Drug Enforcement Administration (DEA) learned that Ruben Garcia-Hernandez, a suspected drug trafficker, would be participating in a drug transaction. DEA agents and officers from the Tulsa Police Department began surveilling him. They saw him enter an apartment in Tulsa and exit carrying a paper bag. He then drove to a gas station, where he pulled up next to a white Scion bearing Arkansas plates driven by Defendant.

Tulsa Officer Corbin Collins was watching the gas station. He observed Defendant exit the Scion, walk over to the passenger side of Garcia-Hernandez's vehicle, and place something inside while Garcia-Hernandez stood between the two vehicles. Collins saw Defendant return to the passenger side of the Scion, but he could not see "exactly what he was doing." R., Vol. 3, Jury Tr. Vol. 1 at 27. Afterwards, Defendant got in the Scion, picked up a passenger who had earlier gone inside the station, and drove north.

Tulsa Officer Anthony First followed the Scion in the light rain, and initiated a traffic stop when he observed the Scion make an unsafe lane change. He approached the car on the passenger side, where he noticed that the passenger-side window was partially down and that there was "a very strong, sweet odor coming from the car." *Id.*, Vol. 2, Mot. Hr'g at 9. Defendant was unable to produce a driver's license or proof of insurance, and gave different versions of who owned the Scion.

Officer First returned to his patrol car, accompanied by Defendant, and began a computer-records check. To obtain the Scion's vehicle identification number, First went back to the car, opened the driver's side door, and examined the Nader sticker in the door jamb. While there, he asked the Scion's passenger about the nature of his and Defendant's visit to Tulsa. The passenger said that they were visiting a friend, but he could not remember the friend's name. Back in the patrol car, Defendant told First that he was in Tulsa looking for work as a painter. Suspecting criminal activity, First summoned a canine unit for assistance.

A few minutes later, Officer Daryl Johnson arrived with his canine partner, Max, and began a "free air search" around the Scion, starting at the front passenger-side headlight and moving counterclockwise around the vehicle. *Id.* at 42. When he and Max arrived at the passenger-side door, "Max focused in on the lower edge or the lower seam of the door as well as the seat belt which was sticking outside of the [Scion]." *Id.* at 43. Max did not alert, however, and they resumed circling the Scion. After several more loops around the car, Max "stood on his back two legs and stuck his nose up in the [driver's side] window to the window area and looked to be focusing on something," but then he became distracted by the traffic. *Id.* at 44. The window had been fully open, and Max's nose had gone "across the line of the window." *Id.* at 45. Max then proceeded clockwise, stopping 15 or 25 seconds later at the passenger-side door, where he

-3-

"focus[ed] on the window and then again on the seat belt" and "alerted to the odor of narcotics." *Id.* at 46.

A search of the Scion uncovered almost $1,400 in cash, two cell phones (in addition to two found on Defendant), two bottles of cologne, and a brown paper bag on the floor behind the driver's seat containing methamphetamine wrapped in cellophane. Defendant and his passenger were arrested and ultimately charged with possessing with intent to distribute 50 grams or more of a mixture or substance containing methamphetamine.

Defendant moved to suppress, alleging that Max "breached the interior of the vehicle during the sniff." *Id.*, Vol. 1 at 36. The district court denied the motion. It said that there was no evidence that the officers rolled down a window, and even if they did, Max alerted to the passenger-side seat belt, which was protruding through the closed door.

At trial, DEA agents and Tulsa officers testified to their surveillance and search. Garcia-Hernandez, who had pleaded guilty, testified that at the gas station Defendant had removed from Garcia-Hernandez's vehicle a paper bag containing methamphetamine and placed it in the Scion. In addition, in regard to the methamphetamine seized, DEA agent Michael Rupe testified that its purity (99.6%) and weight (446 grams) indicated a "distribution quantity," rather than a "user quantity." R., Vol. 3, Jury Tr. Vol. 1 at 124. He also testified that the DEA had intercepted calls from Defendant's passenger to Garcia-Hernandez seeking

pure methamphetamine.  And Rupe explained that drug traffickers typically use multiple cellphones to contact their customers.

The jury found Defendant guilty, and the district court sentenced him to 60 months' imprisonment.

## DISCUSSION

### MOTION TO SUPPRESS

Defendant argues that Max's alert to the methamphetamine was invalid and that the district court erred in denying his motion to suppress.  In reviewing a district court's denial of a motion to suppress, "we review legal conclusions de novo and findings of fact for clear error."  *United States v. Smith*, 606 F.3d 1270, 1275 (10th Cir. 2010).  In conducting our review, we view "the evidence in the light most favorable to the government."  *Id.*

The Fourth Amendment, applicable to the States through the Fourteenth Amendment, protects "against unreasonable searches and seizures."  U.S. Const. amend. IV.  But "[a] canine sniff itself does not implicate Fourth Amendment rights because of the limited information it provides and its minimal intrusiveness."  *United States v. Hunnicutt*, 135 F.3d 1345, 1350 (10th Cir. 1998).  A positive alert by a certified drug dog generally provides probable cause for officers to search a vehicle.  *See United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3321 (2010).  Officers may not, however, rely on a dog's alert if they open part of the vehicle so the dog can enter

or if they encourage the dog to enter. *See United States v. Winningham*, 140 F.3d 1328, 1331 (10th Cir. 1998); *cf. United States v. Stone*, 866 F.2d 359, 364 (10th Cir. 1989) (reliance on alert was proper when dog's entry into vehicle was instinctive).[1]

Defendant challenges Max's intrusion with his nose into the Scion through the driver's side window, arguing that the "window was rolled down, and the officers provided no explanation for the window being down." Aplt. Br. at 21. He theorizes that he would not have rolled it down because it was raining and because Officer First spoke with the occupants from the passenger side. But the evidence offered at the suppression hearing suggests that the Scion's occupants likely opened the window. According to Officer First, it was only "kind of rainy" or "drizzly." R., Vol. 2, Mot. Hr'g at 7, 29. Further, when he approached the car after pulling it over, the passenger-side window was already partially down. And although First opened the driver's side door to obtain the vehicle identification number, the Nader sticker was in the door jamb, so viewing it would not have required opening the window. Finally, Officer Johnson, who accompanied Max around the Scion, testified in detail about the free-air search but never mentioned opening the driver's side window or doing anything to encourage Max to stick his nose through the window.

---

[1]    Although "[i]n exceptional cases, a dog alert might not give probable cause if the particular dog had a poor accuracy record," *Parada*, 577 F.3d at 1281 (internal quotation marks omitted), there is no dispute here as to Max's accuracy.

We conclude that Defendant has not met his "burden of establishing a Fourth Amendment violation." *United States v. Chavira*, 467 F.3d 1286, 1290 (10th Cir. 2006).

SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence at trial showed only that he possessed the methamphetamine found in the Scion, not that he intended to distribute it. "We review sufficiency of the evidence challenges de novo, viewing the evidence in the light most favorable to the government." *Parada*, 577 F.3d at 1283. "We reverse only if no rational jury could have found each element of the crime beyond a reasonable doubt." *Id.*

"[W]e have repeatedly stated that possession of a large quantity of narcotics is sufficient to establish the element of intent to distribute." *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 n.4 (10th Cir. 2000). And DEA Agent Rupe testified that the large amount and high purity of the methamphetamine in this case suggest intent to distribute, rather than mere possession. He further testified that multiple cellphones, such as the ones recovered in the Scion, also indicate drug trafficking.

We conclude that the evidence was sufficient to convict Defendant on the charge of possession with intent to distribute.

-7-

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Harris L Hartz
Circuit Judge