**2022 UT App 61**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
RACHEL NICOLE BEAMES,
Appellant.

Opinion
No. 20200699-CA
Filed May 12, 2022

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 191401971

Emily Adams and Benjamin Miller,
Attorneys for Appellant

Simarjit S. Gill and Jennifer K. Zeleny,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGE RYAN M. HARRIS concurred. JUDGE MICHELE M.
CHRISTIANSEN FORSTER dissented, with opinion.

ORME, Judge:

¶1 Rachel Nicole Beames appeals her convictions for possession of a controlled substance and possession of drug paraphernalia. She argues that her trial counsel was ineffective for not seeking to suppress drug evidence located as a result of a drug-sniffing dog's search of her vehicle. We agree and reverse.

BACKGROUND[1]

¶2     In April 2019, a police officer (Officer) saw a car "parked behind [a] Walmart in kind of a strange area where no one could see it." Officer went to "observe" the car and noticed two people inside it, one of whom was Beames. He approached to speak with them. Officer asked for their identification, which they provided.

¶3     Officer then left, but a driver license check revealed both licenses to be invalid, so Officer "pulled back around in the parking lot to make sure they didn't leave and drive on invalid licenses." At this point, Officer noted that Beames was in the driver's seat. She then drove the car to a different spot in the parking lot, but Officer did not initiate a stop because Beames never left the parking lot. While performing further records checks on Beames and her passenger, who was later revealed to be her boyfriend (Boyfriend), Officer discovered that Boyfriend "[h]ad been previously trespassed from all Walmarts worldwide." Officer decided to investigate and again initiated contact with Beames and Boyfriend. At some point, other officers arrived on the scene.

¶4     Officer "asked [Beames] to stay in the vehicle," but he asked Boyfriend to exit the car, which Boyfriend did "voluntarily." Beames then "stepped out of the vehicle as well" after another officer (Handler Officer), who had also recently arrived on the scene with his drug-sniffing dog, "ha[d] her get out of the vehicle." Dashcam footage of the encounter shows Beames and Boyfriend outside the vehicle. The doors of the vehicle were open, but the footage does not begin early enough to reveal how or why the doors were left open. While Officer was talking to Boyfriend, and another officer was talking to Beames, Officer

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Daniels*, 2002 UT 2, ¶ 2, 40 P.3d 611.

asked Handler Officer and his dog "if he'd perform a sniff of the vehicle." Handler Officer then brought Timber, a drug-sniffing dog, to the "front driver's side wheel" and, expecting only a perimeter sniff, gave Timber "the search command." But Timber, while still on a leash and seemingly before he made any sort of alert or indication, "immediately jump[ed] in the car." Although Handler Officer did not "tell him to do it," Timber went "right on in there and he starts fiercely sniffing" and then exited the car on the passenger side. Timber was in the vehicle this first time for a total of only seven seconds. Handler Officer, standing near the driver's side door where the dog had entered, then ordered Timber to "come here," and Timber returned to the inside of the car through the passenger's side door, whereupon Handler Officer shut the driver's door. Handler Officer then moved around the car to the passenger's side and stood by the open door looking into the car.

¶5    Timber, who was in the car for nearly a full minute this time, then indicated the possible presence of drugs, and Handler Officer thereafter searched the car. During this search, Handler Officer found a makeup box containing a glass pipe and methamphetamine in a compartment on the passenger's side of the car. After Handler Officer announced what he found, Officer began to arrest Boyfriend. Beames asked why Boyfriend was being arrested and told Officer, "Whatever it is, it's mine." When Officer continued to arrest Boyfriend, she protested: "I'm telling you that it's mine, so why are you still arresting him?" Officer responded that he was continuing with the arrest because he found the box by where Boyfriend's feet would have been when he was seated in the car. Beames responded, "Wasn't it in a women's frickin' eyelash thing?"

¶6    Due to Beames's "relatively uncooperative" attitude and her statements that the box was hers, Officer also placed her under arrest. Officer then spoke with Beames further, and she stated that "she was aware of the items being in the car, however, they weren't hers, she was just saying they were" to protect Boyfriend.

¶7     The State charged Beames with possession of a controlled substance and possession of drug paraphernalia.[2] Beames's appointed counsel (Trial Counsel) did not seek to suppress the drug evidence found during the search, and after the court bound Beames over following a preliminary hearing, the case proceeded to trial.

¶8     At trial, Officer and Handler Officer testified consistent with the facts previously laid out. The State also presented the dashcam footage from a police car showing Timber searching the car and bodycam footage in which the statements Beames made when Boyfriend was being arrested can be heard. Beames testified in her own defense. She stated that the drugs were not hers and that she said that they were only to help Boyfriend, who was on parole at the time. She also testified that she "asked if the drugs were found in like an eyelash thingy or eyelash container" because her sister, who uses drugs, kept them in such a container and had driven the car earlier that day. Beames stated that she was unaware that her sister left drugs in the car.

¶9     The jury subsequently found Beames guilty as charged. Beames appeals.


ISSUE AND STANDARD OF REVIEW

¶10    Beames asserts that Trial Counsel was ineffective for failing to seek suppression of the drug evidence as the fruit of an impermissible search under the Fourth Amendment. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective

---

2. There is no information in the record regarding any charges filed against Boyfriend.

assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified).

## ANALYSIS

¶11　An ineffective assistance of counsel claim requires a defendant to establish both that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, i.e., that trial counsel's actions "fell below an objective standard of reasonableness," the defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 688–89. Indeed, "even if an [act or] omission is inadvertent and not due to a purposeful strategy, relief is not automatic." *State v. Ray*, 2020 UT 12, ¶ 34, 469 P.3d 871 (quotation simplified). Instead, "even if a court concludes that counsel made an error, the ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350.

¶12　To establish prejudice, "a defendant must present sufficient evidence to support a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Archuleta v. Galetka*, 2011 UT 73, ¶ 40, 267 P.3d 232 (quotation simplified). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. And when a defendant asserts that his counsel performed deficiently in failing to bring a Fourth Amendment claim, "in order to demonstrate actual prejudice," the defendant "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

¶13   In *Kimmelman*, the United States Supreme Court did not specifically explain what it meant by "meritorious" in analyzing an ineffective assistance of counsel claim, but the structure of the quoted language suggests that "meritorious" does not mean that the claim was necessarily guaranteed to succeed. Rather, it suggests that the claim had enough merit to it to lead to the conclusion that there is "a reasonable probability that the verdict would have been different," which is the ultimate inquiry under *Strickland*. *Id*. And a few years later, in *Lockhart v. Fretwell*, 506 U.S. 364 (1993), Justice Stevens noted, "*Kimmelman* at one point refers to the necessity for a 'meritorious' Fourth Amendment claim," which "represents no more than straightforward application of *Strickland*'s outcome-determinative test for prejudice." *Id.* at 380 n.6 (Stevens, J., dissenting). Justice Stevens then stated,

> Simply put, an attorney's failure to make a Fourth Amendment objection will not alter the outcome of a proceeding if the objection is meritless, and hence would not be sustained. Nothing in *Kimmelman* suggests that failure to make an objection supported by current precedent, and hence *likely to be sustained*, would amount to anything less than ineffective assistance.

*Id.* (emphasis added). We agree with Justice Stevens's view and determine that *Kimmelman's* use of the word "meritorious" does not add an additional burden on a defendant to prove that the motion would *certainly* have been granted. We read it to simply mean that the defendant must show that the Fourth Amendment motion would *likely* have been successful, which is consistent with the "straightforward application of *Strickland*'s outcome-determinative test for prejudice." *Id.*

¶14   This holding is also consistent with our Supreme Court's reading of "meritorious" in *Winward v. State*, 2012 UT 85, 293 P.3d 259, albeit in a slightly different ineffective assistance of counsel context. In that case, the Court addressed a threshold question of

whether a defendant's ineffective assistance of counsel claim, brought pursuant to the Post-Conviction Remedies Act, contained "a meritorious defense" necessary to meet an exception to certain procedural requirements contained in the Act. *Id.* ¶ 18. The Court noted that "[t]o establish a meritorious defense based on the ineffective assistance of counsel," the defendant does not bear the additional burden to prove that the defense certainly would have succeeded, but rather the defendant simply had "to prove both that he received deficient performance from his trial counsel, and that this deficient performance prejudiced the outcome of his trial." *Id.* ¶ 22. This framework is consistent with Utah's ineffective-assistance jurisprudence, which does not require that a defendant pursuing an ineffective assistance claim establish that the outcome would certainly have been different, but only that there is "a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Archuleta*, 2011 UT 73, ¶ 40 (emphasis added) (quotation otherwise simplified).

¶15    Finally, this understanding of "meritorious" is consistent with the term's use in other contexts, where it does not mean a sure winner but only something with a solid basis in the facts and law. *See Gillman v. Gillman*, 2021 UT 33, ¶ 41, 493 P.3d 655 (noting that a "meritorious defense," as part of an analysis of whether a district court should have set aside a default judgment for good cause under rule 55 of the Utah Rules of Civil Procedure, is a defense that "is good at law so as to give the factfinder some determination to make" and "does not mean the court must consider whether the defendant will ultimately succeed on the merits") (quotation simplified); *Menzies v. Galetka*, 2006 UT 81, ¶ 108, 150 P.3d 480 (holding that in the context of a motion to set aside judgment under rule 60(b) of the Utah Rules of Civil Procedure, "a defense is sufficiently meritorious if . . . it is *entitled to be tried*") (emphasis added) (quotation otherwise simplified); *Bresee v. Barton*, 2016 UT App 220, ¶ 49, 387 P.3d 536 (stating that in the context of bad-faith attorney fees awarded by statute, meritorious claims are those that contain both "a factual basis"

and "a *theoretical* basis in law for those claims") (emphasis added) (quotation otherwise simplified).

¶16 In this case, Beames asserts that Trial Counsel was ineffective for not seeking to suppress the drug evidence found in the car because the search of her car was constitutionally impermissible. Specifically, she contends that because Timber "did not have probable cause to enter the car, this search violated the Fourth Amendment, and the fruits from that search . . . should have been suppressed."

¶17 Because Beames presents her claim in the context of an ineffective assistance of counsel claim, and cannot directly challenge the admission of the evidence, we must first analyze, based on the record before us, whether a motion to suppress the evidence on Fourth Amendment grounds appears meritorious.[3]

---

3. Because Trial Counsel never filed a motion to suppress, we do not have the benefit of testimony from an expert on drug-sniffing dogs regarding when and how they alert to or indicate the presence of drugs. Rather, we have only Handler Officer's testimony from the preliminary hearing and from trial that explains how Timber alerts or indicates, but not in the same detail typical of such cases. *See State v. Ruiz*, 2021 UT App 94, ¶¶ 7–15, 497 P.3d 832. Thus, on this record, we cannot say with certainty that a motion to suppress would have succeeded because we do not know what other evidence might have been presented if Trial Counsel had moved to suppress the evidence in a timely fashion. The dissent latches on to this and asserts, "Even though we have testimony from Handler Officer about Timber's alerts and a general description of Timber's actions during the sniff, Handler Officer was never asked if Timber alerted during his first entry into the vehicle," and it is not "this court's place to presume that constitutional error occurred merely because there is no definitive evidence on the particular factual issue that is determinative here." *See infra* ¶ 43. The dissent then posits that, "[a]ccordingly,

(continued…)

We proceed in this manner because if the motion would have failed in any event, Beames has no ground to complain that Trial Counsel was ineffective for failing to bring it. *See State v. Makaya*, 2020 UT App 152, ¶ 9, 476 P.3d 1025 ("A futile motion necessarily fails both the deficiency and prejudice prongs of the *Strickland*

---

it was Beames's obligation to provide an adequate record on appeal to demonstrate that Timber did not quickly alert when he first entered the vehicle to show that she would have prevailed had a motion to suppress been filed." *See infra* ¶ 44.

First, we disagree with the dissent's characterization of the record as inadequate. Here, we have the dashcam video as well as Handler Officer's testimony and, while it is true that Handler Officer's testimony was not given in the context of a motion to suppress, his testimony (supplemented by the video) did detail, rather specifically, the actions Timber took and his eventual alert. And it seems unlikely that Handler Officer would speak in terms of Timber alerting only when he re-entered the car if, in Handler Officer's judgment, he alerted during his brief initial entry as well. Experience suggests that a drug-sniffing dog's handler who effected a successful search for drugs would routinely want to establish that he had probable cause to support the search at the earliest possible point in time. Second, we do not "presume that constitutional error occurred," as the dissent asserts. Rather, we simply determine that Beames has shown, based on the adequate record before us—a record that contains Handler Officer's clear testimony that Timber alerted only when he entered the car the second time and video footage that supports that assertion—that a Fourth Amendment claim here was *reasonably likely* to have succeeded. This is a far cry from presuming constitutional error and is in line with the framework of an ineffective assistance of counsel claim, under which we do not need to say for certain that the motion would have succeeded. In this context, it is sufficient to determine that the motion appears meritorious, i.e., that it was *"likely to be"* granted, *see Lockhart v. Fretwell*, 506 U.S. 364, 380 n.6 (1993) (Stevens, J., dissenting) (emphasis added); *supra* ¶¶ 13–15, and that Trial Counsel was unreasonable in not pursuing it.

analysis because it is not unreasonable for counsel to choose not to make a motion that would not have been granted, and forgoing such a motion does not prejudice the outcome."). *See also Kimmelman*, 477 U.S. at 375 (noting a defendant asserting ineffective assistance of counsel for counsel's failure to bring a Fourth Amendment claim must "prove that his Fourth Amendment claim is meritorious"). But even if the motion appears meritorious, it does not automatically follow that counsel was ineffective for not pursuing it. Rather, we must then "assess whether counsel may have had a sound strategic reason for not" moving to suppress, mindful that we "must always base [our] deficiency determination on the ultimate question of whether counsel's act or omission fell below an objective standard of reasonableness." *State v. Ray*, 2020 UT 12, ¶ 36, 469 P.3d 871. *See State v. Scott*, 2020 UT 13, ¶ 36, 462 P.3d 350 ("[T]he ultimate question is always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable.").

## I. Timber's Search

¶18 The Fourth Amendment protects "an individual's right against unreasonable searches and seizures," *State v. Rigby*, 2016 UT App 42, ¶ 7, 369 P.3d 127, safeguarding "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" by the government, U.S. Const. amend. IV. And "because warrantless searches are per se unreasonable, police officers generally need a warrant to search a place in which a person has a reasonable expectation of privacy." *Rigby*, 2016 UT App 42, ¶ 8 (quotation simplified).

¶19 "There are, of course, exceptions to the general rule, one of which is the so-called automobile exception." *Id.* (quotation simplified). This exception permits police officers to search an automobile if it "is readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). And as relevant to the case at hand, because "[a] drug dog is an instrumentality of the police," its actions in

searching vehicles are also "governed by the Fourth Amendment." *United States v. Pulido-Ayala*, 892 F.3d 315, 318 (8th Cir. 2018). Nonetheless, "a drug-trained dog may walk the perimeter of a lawfully detained vehicle even if police have no reasonable suspicion that the vehicle occupants are engaged in drug-related activity so long as the dog sniff search does not extend the duration of the stop."[4] *State v. Baker*, 2010 UT 18, ¶ 29, 229 P.3d 650 (citing *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)). But if a dog enters a vehicle "prior to the establishment of probable cause," its subsequent search "may raise Fourth Amendment concerns because people have a reasonable expectation of privacy in the interior of their automobiles." *State v. Ruiz*, 2021 UT App 94, ¶ 19, 497 P.3d 832 (quotation simplified). A drug dog entering a vehicle without probable cause, however, is not a per se violation of the Fourth Amendment. Rather, if a drug dog enters a vehicle before probable cause is established, its ensuing search of the vehicle can be permissible under the Fourth Amendment if "(1) the dog's leap into the car was instinctual rather than orchestrated and (2) the officers did not ask the driver to open the point of entry, such as a hatchback or window, used by the dog." *Id.* ¶ 20 (quoting *United States v. Vazquez*, 555 F.3d 923, 930 (10th Cir. 2009)).

¶20 These two considerations go hand in hand. "First, 'instinctive' implies the K-9 enters the car without assistance, facilitation, or other intentional action by its handler." *Id.* ¶ 21 (quotation simplified). "A drug-sniffing dog's instinctive actions do not violate the Fourth Amendment where there is no evidence that the police asked a suspect to open the vehicle so the dog could jump in or any evidence the police handler encouraged the dog to jump in the car." *Id.* (quotation simplified). Second, how the dog's access point came to be open to allow for the dog's entry is also relevant. For example, "the fact that the passenger window of the vehicle is open, creating an opportunity for the dog to breach the

---

4. Beames does not contend that Timber's search extended the duration of the encounter.

interior of the vehicle, does not render a search unlawful, provided that the officer does not open the window, order the window be opened, or order the window to remain open." *Id.* ¶ 22 (quotation simplified). But if the officer orchestrates the opening of a point of entry to create "the opportunity for a drug-sniffing K-9 to enter a vehicle, that entry violates the Fourth Amendment because the officer facilitated the K-9 sniff of the vehicle's interior." *Id.* (quotation simplified).

¶21 Therefore, we first consider whether there was probable cause even before Timber initially entered the car that would have allowed Timber's entry. Holding that there was no probable cause at the outset, we then consider whether Timber's actions while in the car the first time—given that it is fairly obvious Timber's first entry was instinctual and not directed by Handler Officer—provided probable cause for Timber to re-enter the car. Concluding that, based on the record before us, Timber's actions while in the car the first time do not appear to have provided probable cause, we next consider whether Timber instinctually re-entered the car or was directed to re-enter by Handler Officer. We then hold that Timber did not instinctually re-enter the car on the occasion when he indicated the presence of drugs, and on this basis alone, there is a reasonable probability that the search was unconstitutional. *See United States v. Ayala*, 446 F. App'x 78, 80 (10th Cir. 2011) ("Officers may not, however, rely on a dog's alert . . . if they encourage the dog to enter [the vehicle].").

A.    Probable Cause

¶22    "Determinations of whether probable cause exists require a common sense assessment of the totality of the circumstances confronting the arresting or searching officer. Probable cause is more than suspicion but less than certainty." *State v. Spurgeon*, 904 P.2d 220, 226 (Utah Ct. App. 1995) (internal citation omitted).

¶23    Here, there was no probable cause at the outset that permitted the officers to search the interior of the car because they

had no reason to believe that a search would uncover contraband or evidence of a crime.[5] *See Pulido-Ayala*, 892 F.3d at 318 ("Police ordinarily cannot search the interior of an automobile unless they have probable cause to believe that the vehicle contains contraband or other evidence of a crime."). Officer initially investigated the car because it was in "a strange area where no one could see it." After interacting with Beames and Boyfriend, Officer discovered that both their driver licenses were invalid, and he "pulled back around in the parking lot to make sure they didn't leave and drive on invalid licenses." Officer then initiated contact again after he discovered that Boyfriend "[h]ad been previously trespassed from all Walmarts worldwide" and, given their proximity to a Walmart, he decided to investigate. There is no hint in any of this that Officer reasonably suspected the presence of illegal drugs in the car.

¶24 Instead, the record established that Officer investigated only because both occupants of the car had invalid driver licenses and Boyfriend might have been trespassing at Walmart. This contrasts with Utah appellate decisions holding, for example, that police had probable cause to search for drugs because there were drugs or paraphernalia in open view, *see State v. Gurule*, 2013 UT 58, ¶ 30, 321 P.3d 1039 ("Because [the officer] did not perform

---

5. The State contends that there is an "absence of evidence" regarding whether probable cause existed at the outset. Consequently, the State asserts, Beames "cannot overcome the strong presumption that Trial Counsel acted reasonably." Although this is a sound legal concept, it simply does not apply here. There is plenty of evidence before us on which we can base an assessment about whether the officers had probable cause at the outset. We have the testimony of both officers and video footage of the search. Officer testified about his reasoning for investigating, and Handler Officer testified in detail about the actions of Timber. Thus, between that testimony and the video, there is clearly enough record evidence for us to evaluate whether there was probable cause to support a search from the outset.

an invasive search of the vehicle, but rather only looked at what he could see in plain-view, his plain-view search was proper."), or because a scent of drugs was present, *see State v. Wright*, 1999 UT App 86, ¶ 10, 977 P.2d 505 ("It is undisputed here that [the officer] smelled marijuana before he searched. That fact alone gave him probable cause to search[.]"). There was nothing of the kind in this case to suggest that the car contained evidence that a drug offense "has been or is being committed." *See State v. Dorsey*, 731 P.2d 1085, 1088 (Utah 1986) (quotation simplified).

¶25    Additionally, the record before us contains no indication that Timber's initial behavior outside the car could have supplied probable cause for officers to search the inside of the car. When Timber was given a command to search the exterior perimeter, he did not alert to or indicate the presence of drugs before he entered the car for the first time. Rather, he almost immediately jumped into the vehicle on his own instinct and not as commanded. *Cf. United States v. Vazquez*, 555 F.3d 923, 929–30 (10th Cir. 2009) (holding that, because a drug dog first alerted on the outside of the car to the presence of drugs, its entry and discovery of drugs inside the car did not violate the Fourth Amendment).

¶26    This is not the end of our probable cause analysis, however, because the State contends that even if the officers did not have probable cause at the outset, Timber instinctually entered the car the first time and then gave an "earl[y] indication" to the presence of drugs. This, the State posits, provided Handler Officer with probable cause to direct Timber to re-enter the car. The State bases this argument on Handler Officer's preliminary hearing testimony, asserting that his testimony proves that Timber gave an alert or indication the first time he was in the car. We disagree. Based on our review of Handler Officer's preliminary hearing testimony, his trial testimony, and the dashcam footage, the record before us contains no evidence that Timber alerted to or indicated the presence of drugs until after he re-entered the car.

¶27 At trial, Handler Officer testified that Timber alerts to drugs by doing a "head check a couple of times," moving his head back and forth and "working his way into his scent." Handler Officer also testified that he taught Timber "his indication, which is his final response," and which Timber provides in a "passive" manner by "sit[ting] down" or by "star[ing] at the source of the odor." Handler Officer then testified, with our emphasis, that when he gave Timber the command to search the exterior of the car, Timber "immediately jump[ed] in the car" and "start[ed] fiercely sniffing." Timber then promptly exited the car and, only after Handler Officer instructed him to return, did Timber come "*back on in* the . . . passenger side" and "*[a]t this point . . .* he's now sitting in a positive indication." At the preliminary hearing, Handler Officer testified that he "started [Timber] on a front driver side fender. He pulled me into the car, and I had to drop his leash he went into the car so fast. At that point, I went around to the passenger side to get him and he was sitting in a positive indication on the passenger floorboard." This testimony, when combined with the dashcam footage showing Timber leaving the car seven seconds after first entering—with Handler Officer coming to the passenger side only after Timber re-entered the car—and Timber then lingering some fifty-one seconds on his second entry, provides enough evidence that Timber indicated the drugs only on his second entry into the car, and not his first. This is consistent with Handler Officer's trial testimony that it was when Timber came "back on in the . . . passenger side" that Timber sat "in a positive indication." Thus, nothing in the record before us supports the notion that Handler Officer had probable cause to direct Timber back into the car based on any sort of alert or indication during Timber's first entry.

¶28 Having apparently not indicated or alerted during his first entry into the car, the only act Timber did here that might bear on probable cause was to "fiercely sniff[]" for drugs. This, however, did not provide probable cause because, based on Handler Officer's testimony, fiercely sniffing is not how Timber alerts to or indicates drugs. For probable cause to be established based on a

drug dog's search, the dog must alert or indicate—fiercely sniffing is not enough. *See State v. Perkins*, 2019 UT App 117, ¶ 21, 446 P.3d 145 (holding that "the dog *alert* on the truck . . . established probable cause") (emphasis added); *United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009) ("Our other dog alert cases do not specify whether the dog's response was a general alert or a final indication; we have simply noted that the dog's 'alert' provides probable cause."); *Vazquez*, 555 F.3d at 929 ("Once [the drug dog] *alerted* to the vehicle's front and rear bumpers, the officers had probable cause to search the car and its contents.") (emphasis added). If we were to hold otherwise, we would impermissibly expand justification for warrantless searches of automobiles simply because a drug-sniffing dog is brought in and begins to sniff vigorously for drugs—which, of course, is part of its job description—but does not alert or indicate.

B.     Timber's Re-entry Into the Car

¶29     Beames asserts that Handler Officer's "words and actions facilitated the dog's search inside the car" and he "encourag[ed] the dog to re-enter the car." We agree.[6]

---

6. For purposes of our analysis, we assume that Timber's initial entry into the vehicle was instinctual and not facilitated by the officers. But because Timber left the car in seven seconds and did not appear to alert to or indicate the presence of drugs during his brief first entry, this instinctual leap does not render the eventual discovery of drugs in this case permissible because the re-entry now becomes the critical point in the analysis. Thus, we view Timber's initial exit from the vehicle as a break requiring a restart of the analysis to determine whether Timber's re-entry was instinctual rather than orchestrated. If we were to hold otherwise, a drug dog could instinctually enter a vehicle and not alert or indicate, then exit and be ready to be placed back in its kennel only for the handling officer to have second thoughts and direct

(continued…)

¶30   Here, after first entering the car and "fiercely sniffing," Timber exited the car in seven seconds, without appearing to alert or indicate, and he seemed to be headed around the back of the car to reunite with Handler Officer. But Handler Officer altered that chain of events. Handler Officer, who was still standing on the driver's side of the car, ordered Timber to "come here." Timber complied with that command by re-entering the car via the open passenger door. Once Timber re-entered the car, Handler Officer closed the driver's door and moved to stand beside the open passenger's door, effectively confining Timber in the car for Timber to conduct a search. After this re-entry, with Timber remaining in the car for nearly a minute, Timber indicated the presence of drugs.

¶31   Because Timber's second entry into the car was orchestrated by Handler Officer, who directed Timber back into the car and blocked his exit, Timber's re-entry into the car cannot be considered instinctual. Thus, Timber's presence in the car needed to be justified by probable cause to search the car, and here it was not. Accordingly, the officers' search of the vehicle, facilitated by Timber's nose, was contrary to constitutional principles. *See State v. Ruiz*, 2021 UT App 94, ¶ 20, 497 P.3d 832; *United States v. Ayala*, 446 F. App'x 78, 80 (10th Cir. 2011) (holding

---

the dog back into the vehicle to continue sniffing for drugs. If the dog then alerted to or indicated drugs during this second attempt, in this hypothetical scenario that search would be allowed. This conclusion, however, would run afoul of the Fourth Amendment. The dog's failure to alert to or indicate drugs after instinctually entering the vehicle the first time would fail to provide probable cause and, without probable cause, the dog could re-enter only so long as it did so instinctually again and not at the behest of its handler. *See State v. Ruiz*, 2021 UT App 94, ¶ 20, 497 P.3d 832. Thus, we hold that when a drug dog enters a vehicle instinctively, but then exits on its own accord without alerting to or indicating drugs, any re-entry must be analyzed anew.

that without probable cause, a drug dog's search is impermissible if officers "encourage the dog to enter" the vehicle).

C.    Conclusion

¶32    In summary, based on the record before us, a motion to suppress the evidence discovered in the vehicle appears meritorious—that is, it would have had a reasonable likelihood of success. The record contains no indication that the officers had probable cause at the outset or during Timber's first entry into the car and, as a result, for the search following Timber's re-entry to be permissible, Handler Officer must not have orchestrated it and Timber's re-entry into the car must have been purely instinctual. In this instance, that was clearly not the case: Timber's second entry into the vehicle was orchestrated by Handler Officer, who encouraged Timber to re-enter the car, whereupon Handler Officer shut the driver's side door to keep Timber in the car to search for drugs.

## II. Ineffective Assistance of Counsel

¶33    Having determined that, based on the record before us, a motion to suppress appears meritorious, we must now determine if Trial Counsel rendered ineffective assistance in not filing such a motion. We readily hold that Trial Counsel's performance was deficient and that this prejudiced Beames.

¶34    Here, the drug evidence was the only tangible evidence the State presented of Beames's guilt, and had it been suppressed, the State would have undoubtedly dismissed the charges against her. Thus, there was not "a sound strategic reason for not [moving to suppress]," *see State v. Ray*, 2020 UT 12, ¶ 36, 469 P.3d 871, and reasonable counsel would have done so because it was Beames's only realistic chance to avoid a conviction, *cf. State v. Bell*, 2016 UT App 157, ¶ 23, 380 P.3d 11 (holding that counsel was ineffective for not making a "risk-free" merger motion that would have succeeded "under [the] correct application of the law"). By not

doing so, Trial Counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶35 The State argues that Trial Counsel could have acted reasonably in not moving to suppress the evidence because Boyfriend was on parole at the time. Citing Utah Code section 77-23-301, the State contends that because the law "permit[s] warrantless searches of residences, vehicles, and personal effects of persons on parole without probable cause," Trial Counsel could have reasonably not moved to suppress on the basis that the State would have responded that Boyfriend's parole status allowed a suspicionless search.[7] As explained below, this argument is unavailing.

¶36 When analyzing whether police conduct is appropriate under the Fourth Amendment, we review the facts objectively and do not consider the subjective intent of the officers. *Whren v. United States*, 517 U.S. 806, 814 (1996). This does not mean, however, when defending a later challenge to a search, that the State is allowed to concoct any reason whatsoever to justify the search. Rather, the justification for the search "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer *at the time*" of the search, *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (emphasis added), and "the Government cannot rely upon post hoc rationalizations to validate those seizures that happen to turn up contraband," *United States v. Foster*, 634 F.3d 243, 249 (4th Cir. 2011). *See also United States v. Martinez-Fuerte*, 428 U.S. 543, 565 (1976) (noting that a purpose of the Fourth Amendment "is to prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure"); *United*

---

7. In so asserting, the State glosses over the fact that the car did not belong to Boyfriend and that no "effects" were searched other than a makeup box that the officers apparently did not believe was tied to Boyfriend once Beames spoke up.

*States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010) (holding that "police officers may not look for after-the-fact justifications for stops that would otherwise be impermissible; following a stop, the government should not begin poring through state and local traffic ordinances looking for any that a suspect might have violated"); *Clark v. Coleman*, 448 F. Supp. 3d 559, 569–70 (W.D. Va. 2020) (declining to consider the officer's "post hoc rationalization" for the traffic stop and subsequent search because it could not "be squared with the evidence presented").

¶37 On the record before us, there is no indication that either Officer or Handler Officer knew about Boyfriend's parole status before they conducted the search.[8] In fact, had they known about his status, and if ownership of the car and makeup kit are as inconsequential as the State posits, *see supra* note 7, they presumably would have just searched the car without bothering to bring in a drug dog. But Officer's reason for undertaking the investigation was based on Boyfriend being trespassed from all Walmarts worldwide and both occupants of the vehicle having

---

8. On cross-examination, Handler Officer testified that he had previously been a corrections officer at the state prison and knew Boyfriend from the time he spent there. Trial Counsel then asked him if Boyfriend "explain[ed] to you that he was on parole at the time," and Handler Officer replied, "I believe so, yes." But comparing Officer's testimony with the dashcam footage, it is clear that Handler Officer discovered Boyfriend's parole status *after* he and Timber searched the car. Officer testified that he was the one who asked Boyfriend to exit the car and while he was "speaking with [Boyfriend], we had [Handler Officer] nearby, and I asked if he'd perform a sniff of the vehicle." This is consistent with the video footage as well, which shows Officer talking with Beames while Handler Officer and Timber are searching the car. Thus, any conversation between Handler Officer and Boyfriend in which Handler Officer became aware of Boyfriend's parole status occurred after the search and cannot be used as a justification for the search.

suspended driver licenses—not Boyfriend's then-unknown status as a parolee. Based on the objective facts existing at the time of the search, the search could not therefore be justified on the post hoc rationalization that Boyfriend was a parolee. Because Boyfriend's parole status was not known to the officers at the time of the search, reasonable counsel would not have forgone a motion to suppress on that basis.

¶38     Finally, determining prejudice in this case is a simple exercise. Even the dissent acknowledges that, had a motion to suppress been filed and granted, the State's main piece of evidence would have been inadmissible, and Beames likely would not have been convicted. *See infra* note 10. We conclude that a motion to suppress would have been meritorious. Had counsel filed such a motion, there is a reasonable likelihood that it would have been granted and that there would have been a different outcome in this case. *See Strickland*, 466 U.S. at 694.

## CONCLUSION

¶39     Trial Counsel provided ineffective assistance when she failed to file a motion to suppress the drug evidence. We vacate Beames's convictions and remand for further proceedings consistent with this opinion.

––––––––––

CHRISTIANSEN FORSTER, Judge (dissenting):

¶40     I agree with the majority that certified drug-sniffing K9 Timber's initial entry into Beames's vehicle was instinctual,[9] but

––––––––––

9. Beames also argues that the police officers unconstitutionally facilitated Timber's entry into the vehicle because the officers opened the doors of the vehicle and left them open to allow Timber to jump in. But there is no record evidence that explains

(continued…)

because I disagree that Beames has met her burden to prove that a motion to suppress would have succeeded, I respectfully dissent. As articulated by the majority, to prevail on her ineffective assistance of counsel claim, Beames must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Archuleta v. Galetka*, 2011 UT 73, ¶ 38, 267 P.3d 232. She must first establish that, despite the strong presumption that trial counsel acted competently and that the challenged action was the product of sound trial strategy, counsel's representation "fell below an objective standard of reasonable professional judgment" such that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *See id.* (quotation simplified). Second, Beames must also establish prejudice because "[a]n error by counsel . . . does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

---

how Beames's car doors came to be open or to prove that the officers intentionally left the doors open to facilitate the K9 sniff. And as explained in this dissent, Beames bears the burden to demonstrate the record adequately supports her claim of ineffective assistance, and the absence of evidence cannot support such a determination. While "interior sniffs may become constitutionally infirm in the event that the interior sniff is accomplished or facilitated by the officer-handler," a dog's instinctual behavior does not violate the Fourth Amendment where the canine acts "on its own initiative and is neither encouraged nor placed into the vehicle by law enforcement." *United States v. Sharp*, 689 F.3d 616, 619–20 (6th Cir. 2012) (quotation simplified); *see also United States v. Pierce*, 622 F.3d 209, 214 (3d Cir. 2010) (applying the "considerable body of jurisprudence" to conclude that the dog's sniffs around the interior of the vehicle did not violate the Fourth Amendment where the handler neither caused nor directed the dog to sniff); *United States v. Winningham*, 140 F.3d 1328, 1331 & n.2 (10th Cir. 1998) (finding a constitutional violation where the police officer opened the vehicle and thus "facilitated" the dog's intrusion into the interior).

*Strickland*, 466 U.S. at 691. Thus, the burden is on Beames to demonstrate a reasonable probability that the outcome of her case would have been different absent counsel's error. *See State v. Garcia*, 2017 UT 53, ¶¶ 34–38, 424 P.3d 171. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 694.

¶41 Here, where Beames's ineffectiveness claim is based on counsel's decision not to file a suppression motion, she must demonstrate her counsel performed deficiently and that she was prejudiced by showing that she would have prevailed on the unargued suppression motion and that there is a reasonable probability that a successful motion would have affected the outcome of the trial. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."); *see also State v. Martinez-Castellanos*, 2018 UT 46, ¶ 45, 428 P.3d 1038 ("A trial counsel's failure to file a . . . motion to suppress can only cause harm to a defendant when the motion would have been successful had the [motion] been filed.").[10] This normally requires a counterfactual analysis exploring what might have been if counsel had raised and fully litigated the suppression issue to conclusion.

¶42 The majority determines that because we have in the record on appeal the testimony of Handler Officer from the preliminary hearing and the trial and the video footage of the

---

10. I agree with the majority that if a suppression motion had been meritorious and the evidence of the controlled substances found in Beames's vehicle excluded, a reasonable probability exists that the trial outcome would have been different because most likely there never would have been a trial at all. *See supra* ¶ 38.

search of Beames's vehicle, "[t]here is plenty of evidence before us on which we can base an assessment about whether the officers had probable cause." *Supra* note 5. Unlike the majority, however, I do not believe the record in this case contains the information necessary to fully address and resolve Beames's contention that Timber did not quickly alert or indicate the presence of drugs until after the dog re-entered the vehicle. It is true that Handler Officer never specifically labeled Timber's immediate jump into the vehicle and fierce sniffing on "the center console wheel area of the passenger side" as an alert sufficient to establish probable cause to justify further sniffing and a search, but Handler Officer was never asked that specific question and did not testify that what Timber did was *not* an alert. Since there was no motion to suppress filed, the focus at the preliminary hearing and at trial was not whether officers had probable cause to search based upon Timber's alert to the presence of drugs in the vehicle; rather, the focus at trial was whether the State could prove that Beames was knowingly in possession of a controlled substance and paraphernalia. *See Florida v. Harris*, 568 U.S. 237, 248 (2013) ("The question—similar to every inquiry into probable cause—is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. A sniff is up to snuff when it meets that test."). In addition, because Timber cannot be seen in the video after he jumps into the vehicle, nobody just watching the dashcam video of Timber's seven seconds in the vehicle can definitively determine, without further explanation from Handler Officer, that Timber's fierce sniffing was something different from his alert when "[h]e closes his mouth real tight and he starts breathing in real heavy because he starts getting excited."

¶43 And because it is Beames's burden on appeal to demonstrate that a suppression motion "would have been successful," *see Martinez-Castellanos*, 2018 UT 46, ¶ 45, the absence of evidence cannot be used to support her claim, *see, e.g., People v. Burnett*, 128 N.E.3d 1094, 1098 (Ill. App. Ct. 2019) (rejecting the

defendant's "attempt[] to spin the lack of testimony about probable cause into a conclusion that there was no probable cause" (quotation simplified)). "[W]here, on direct appeal, [a] defendant raises a claim that trial counsel was ineffective . . . , [the] defendant bears the burden of assuring the record is adequate." *State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92. Further, if "the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *Id.* ¶ 17; *see also State v. Penman*, 964 P.2d 1157, 1162 (Utah Ct. App. 1998) ("When a defendant raises an ineffective assistance claim for the first time on appeal, the claim will be reviewed only if the . . . record is adequate to permit decision of the issue." (quotation simplified)). Though the issue was different from the issue presented here, the United States Supreme Court's decision in *Massaro v. United States*, 538 U.S. 500 (2003), is instructive in this situation:

> When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose. Under *Strickland v. Washington*, . . . a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was

> taken because the counsel's alternatives were even worse.

*Id.* at 504–05. Even though we have testimony from Handler Officer about Timber's alerts and a general description of Timber's actions during the sniff, Handler Officer was never asked if Timber alerted during his first entry into the vehicle, nor do I think the video substantiates any lack of alert. As such, I do not think it is this court's place to presume that constitutional error occurred merely because there is no definitive evidence on the particular factual issue that is determinative here.

¶44 Accordingly, it was Beames's obligation to provide an adequate record on appeal to demonstrate that Timber did not quickly alert when he first entered the vehicle to show that she would have prevailed had a motion to suppress been filed. In my opinion she has not done so, and I would affirm the convictions.

———————